UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *IN RE EX PARTE* APPLICATION OF FOURWORLD EVENT OPPORTUNITIES FUND, L.P. FOR AN ORDER, PURSUANT TO 28 U.S.C. § 1782, GRANTING IT LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS | 22 Misc. 316 (KPF)<br><br>**SEALED ORDER** |

KATHERINE POLK FAILLA, District Judge:

Applicant FourWorld Event Opportunities Fund, L.P. ("FourWorld") filed

this *ex parte* application seeking an order under 28 U.S.C. § 1782 authorizing

it to serve subpoenas on Christian Ulbrich in his individual capacity for use in

a pending Swedish court proceeding (the "Swedish Action").  For the reasons

set forth in the remainder of this Order, the application is granted.

**BACKGROUND**[1]

### A.      The Parties

Applicant is an investment fund managed by FourWorld Capital

Management LLC, a registered investment adviser.  (Scherp Decl. ¶ 5).  As

relevant here, Applicant is a dissenting stockholder of Hembla AB ("Hembla"), a

Swedish real estate company that owns and develops residential properties in

Greater Stockholm.  (*Id.* at ¶¶ 2, 5).

Ulbrich is a member of the board of directors of Vonovia SE ("Vonovia").

(Scherp Decl. ¶ 3).  He has served in this capacity between August 2014

---

[1]     This Order draws its facts from the declarations of Pontus Scherp ("Scherp Decl.") and Marc Rosen ("Rosen Decl."), and their attached exhibits, submitted in support of Applicant's application for judicial assistance pursuant to Section 1782.

For ease of reference, the Court refers to Applicant's memorandum of law in support of its application as "App. Br."

through the present date. (*Id.* at ¶ 8). Vonovia is a German real estate company with extensive real estate interests in Germany, Austria, and Sweden. (*Id.* at ¶ 7). Vonovia is the parent company to HomeStar InvestCo Ab ("HomeStar"), and controls HomeStar as its wholly-owned subsidiary. (*Id.*). On September 23, 2019, Vonovia announced that it had entered into an agreement with The Blackstone Group Inc. ("Blackstone"), through which agreement HomeStar would acquire all of Blackstone's shares in Hembla. (*Id.* at ¶ 10). Following the acquisition, HomeStar controlled approximately 69 percent of Hembla's voting rights and 61 percent of its share capital. (*Id.*). As required by Swedish law, on November 7, 2019, HomeStar announced a tender offer to acquire the shares of other public stockholders of Hembla; on December 18, 2019, Vonovia announced that HomeStar had acquired in excess of 90 percent ownership of Hembla. (*Id.* at ¶¶ 12, 16; *see also id.* Ex. F, Ex. G). Also on December 18, 2019, HomeStar requested the compulsory redemption of the minority shares of Hembla and that Hembla be delisted from the Nasdaq Stockholm. (*Id.* at ¶ 16). Nasdaq Stockholm approved Hembla's application for delisting on December 19, 2019, and the stock ceased trading on January 10, 2020. (*Id.* at ¶ 17; *see also id.* Ex. I).

**B.    The Application**

The present application arises out of HomeStar's compulsory redemption of the minority shares of Hembla under Swedish law. (App. Br. 7-8). Under Swedish law, a shareholder who owns more than ninety percent of the shares in a company may buy out the remaining shares of minority shareholders.

(Scherp Decl., Ex. K (Companies Act, Ch. 22 § 1)).  Where there is a dispute regarding the fair purchase price of the shares, the price is determined "in such a manner that it corresponds to the price for the share which might be expected upon a sale under normal circumstances," and "[w]ith respect to a share which is traded on a Swedish or foreign exchange, an authorised marketplace or any other regulated market, the purchase price shall correspond to the listed value, unless special grounds otherwise dictate." (*Id.* at § 2).  Any such dispute is resolved through arbitration; that said, a party may seek review of an arbitral award in a buy-out dispute before the Stockholm District Court. (*Id.* at §§ 2, 6, 24).  The Stockholm District Court reviews the arbitral award *de novo*, and the parties are permitted to submit new legal and factual arguments, as well as introduce new evidence. (Scherp Decl. ¶ 20).

HomeStar initiated arbitration under the Companies Act, and on June 11, 2020, the arbitral tribunal determined that HomeStar had the right to redeem Hembla shares it did not already own and have prior access to the shares. (Scherp Decl. ¶ 21).  On March 15, 2022, the arbitral tribunal ruled that because Hembla was traded on a regulated exchange and that no special reasons to deviate existed, the price per share to be paid to minority shareholders would be SEK 215 — the same price per share paid by HomeStar to Blackstone, as well as the same price per share announced in HomeStar's tender offer in 2019. (*Id.* at ¶¶ 10, 12, 21).  Following the March 15, 2022

3

arbitral award, Applicant challenged the award in the Swedish Action initiated on May 13, 2022. (*Id.* at ¶ 22).

The basis for Applicant's challenge in the Swedish Action is its argument that special grounds exist for not applying Hembla's listed stock price in ascertaining the value of Applicant's mandatorily redeemed shares. (App. Br. 8; Scherp Decl. ¶ 23). In particular, Applicant raises eight reasons why Hembla's stock price did not correspond to Hembla's real value per share. (App. Br. 8-11; Scherp Decl. ¶¶ 23-35). Applicant believes that following discovery, the Stockholm District Court will rule that the redemption amount for Hembla's shares should not be determined in reference to Hembla's stock price on the relevant date, but instead should be determined after valuation of the expected price in a sale under normal circumstances. (Scherp Decl. ¶ 35).

In this application, Applicant seeks discovery from Ulbrich that it believes will support Applicant's position in the Swedish Action. (Scherp Decl. ¶ 36). Applicant notes that it seeks information from Ulbrich related to: (i) the Blackstone transaction; (ii) the determination of the offer price and other terms "imposed on Hembla's minority shareholders by Vonovia"; (iii) potential conflicts of interest; (iv) what effect the Blackstone transaction had on Hembla's share price; (v) informational asymmetries between Homestar, Vonovia, and public investors; (vi) discussions of alternative plans for Hembla at the time of the acquisition; (vii) Vonovia's control of Homestar; (viii) Vonovia's and Ulbrich's knowledge of the opinion of Hembla against the tender offer and the fairness opinion issued by a bank retained by Hembla deeming the tender

offer unfair; and (ix) Vonovia's and Ulbrich's communications concerning the

tender offer and the true value of Hembla. (App. Br. 11; Scherp Decl. ¶ 37).

Applicant avers that "HomeStar so far has resisted the production of this

discovery in Sweden.... But Mr. Ulbrich, as a director of Vonovia, which in turn

is the parent company controlling HomeStar, will have collected or have

unfettered access to copies of all the discovery" sought by Applicant. (Scherp

Decl. ¶ 38). Specifically, Applicant seeks to serve two subpoenas on Ulbrich: a

document subpoena (Rosen Decl., Ex. 1) and a deposition subpoena (*Id.* Ex. 2).

## LEGAL STANDARD

Section 1782(a) provides, in pertinent part:

> The district court of the district in which a person
> resides or is found may order him to give his testimony
> or statement or to produce a document or other thing
> for use in a proceeding in a foreign or international
> tribunal, including criminal investigations conducted
> before formal accusation. The order may be made ...
> upon the application of any interested person and may
> direct that the testimony or statement be given, or the
> document or other thing be produced, before a person
> appointed by the court.

28 U.S.C. § 1782(a). "The analysis of a district court hearing an application for

discovery pursuant to [Section] 1782 proceeds in two steps." *Fed. Republic of*

*Nigeria* v. *VR Advisory Servs., Ltd.*, 27 F.4th 136, 148 (2d Cir. 2022). At the

first step, the Court must determine whether the applicant satisfies Section

1782's three statutory requirements: that "[i] the person from whom discovery

is sought resides (or is found) in the district of the district court to which the

application is made, [ii] the discovery is for use in a foreign proceeding before a

foreign [or international] tribunal, and [iii] the application is made by a foreign or international tribunal or any interested person." *Mees* v. *Buiter*, 793 F.3d 291, 297 (2d Cir. 2015); *accord Fed. Republic of Nigeria*, 27 F.4th at 148.

If the applicant meets the statutory requirements, a district court "may grant discovery under [Section] 1782 in its discretion." *Mees*, 793 F.3d at 297. The Court must exercise its discretion "in light of the twin aims of the statute: [i] 'providing efficient means of assistance to participants in international litigation in our federal courts and [ii] encouraging foreign countries by example to provide similar means of assistance to our courts.'" *Schmitz* v. *Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 84 (2d Cir. 2004) (*quoting In re Application of Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997)). To evaluate whether granting an application would further Section 1782's aims, the Court must consider four factors that the Supreme Court set forth in *Intel Corp.* v. *Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004). *See Fed. Republic of Nigeria*, 27 F.4th at 148. These four so-called "*Intel* factors" are:

> [i] whether the person from whom discovery is sought is a participant in the foreign proceeding, in which case the need for [Section] 1782(a) aid generally is not as apparent; [ii] the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; [iii] whether the [Section] 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and [iv] whether the request is unduly intrusive or burdensome.

*Id.* (internal quotation marks omitted).

6

## DISCUSSION

At the outset, the Court observes that "it is neither uncommon nor improper for district courts to grant applications made pursuant to [Section] 1782 *ex parte*." *Gushlak* v. *Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) (summary order). Applicant may therefore properly proceed with the present application on an *ex parte* basis. Ulbrich's "due process rights are not violated because [he] can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)." *Id.*

Next, the Court finds that Applicant's application satisfies Section 1782's three statutory requirements. *First*, the application seeks discovery against Ulbrich, whom Applicant avers will be "found" in the Southern District of New York at the time of service of the subpoenas in mid-November, 2022. (App. Br. 13; Rosen Decl. ¶ 3; *id.*, Ex. 3). *See In re Edelman*, 295 F.3d 171, 180 (2d Cir. 2002) ("[R]egardless of any implicit limits on the location of documentary evidence, we hold that if a person is served with a subpoena while physically present in the district of the court that issued the discovery order, then for the purposes of § 1782(a), he is 'found' in that district."); *In re del Valle Ruiz*, 939 F.3d 520, 527 (2d Cir. 2019) (expounding on *Edelman*, and explaining that "so-called tag jurisdiction is consistent with due process" as it relates to Section 1782's reach to individuals); *In re Petrobras Sec. Litig.*, 393 F. Supp. 3d 376, 382 n.5 (S.D.N.Y. 2019). *Second*, Applicant seeks to use the discovery in an ongoing adversarial action in Sweden pending before the Stockholm District Court. (App. Br. 14; Scherp Decl. ¶¶ 3-4, 36-39). *Third*, Applicant is a litigant

7

in the Swedish Action and is therefore an "interested person" for purposes of Section 1782. *See Intel*, 542 U.S. at 256 (remarking that "[n]o doubt litigants are included among … the 'interested person[s]' who may invoke [Section] 1782"); *see also In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 176 (S.D.N.Y. 2020) (observing that "since Applicant is a litigant [in the foreign proceeding], it plainly is an interested person" within the meaning of Section 1782).

The Court further finds that the four *Intel* factors weigh in favor of granting Applicant's application. *First*, Ulbrich is not a party to the Swedish Action. (App. Br. 15; Scherp Decl. ¶ 41). Without 1782 assistance, Applicant claims that the documents and testimony it seeks from Ulbrich would be unavailable. (App. Br. 16). *See In re Application of Auto-Guadeloupe Investissement S.A., for an Ord. to Take Discovery Pursuant to 28 U.S.C. Section 1782*, No. 12 Misc. 221 (RPP), 2012 WL 4841945, at *5 (S.D.N.Y. Oct. 10, 2012) (collecting cases); *see also In re Top Matrix Holdings Ltd.*, No. 18 Misc. 465 (ER), 2020 WL 248716, at *5 (S.D.N.Y. Jan. 16, 2020) ("[T]he Court is not asked to consider whether the requested evidence is located extraterritorially, but whether the 'person from whom discovery is sought is a participant in the foreign proceeding.' Notwithstanding the likelihood that [anticipated corporate defendant in foreign proceeding] also has the requested information, [wholly-owned U.S. subsidiary] and [former CEO of parent] have separate legal personalities, and neither is within the jurisdiction of the Swiss courts.").

*Second*, the Swedish Action is an appropriate subject of judicial assistance, because there is no indication that the Stockholm District Court would not be receptive to discovery obtained through Section 1782. In its application, Applicant argues that Swedish evidentiary rules would allow the use of any evidence obtained via the subpoenas, and that the Stockholm District Court has not provided an affirmative indication that it would not receive such evidence. (App. Br. 18-19; Scherp Decl. ¶¶ 45, 46, 51, 53). *See Euromepa S.A.* v. *R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) (stating that "a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782"); *In re Republic of Kazakhstan for an Ord. Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. sec. 1782*, 110 F. Supp. 3d 512, 518 (S.D.N.Y. 2015) (noting the "absence of authoritative proof that the Swedish tribunal would reject [1782] evidence").

*Third*, "nothing in the record suggests" that Applicant is seeking to circumvent foreign proof-gathering restrictions or other policies. *In re BNP Paribas Jersey Tr. Corp. Ltd.*, No. 18 Misc. 47 (PAC), 2018 WL 895675, at *3 (S.D.N.Y. Feb. 14, 2018). Indeed, Applicant avers that "absent international cooperation and legal process, the Stockholm District Court is powerless to compel Mr. Ulbrich to produce documents" in the Swedish Action. (App. Br. 20).

*Finally*, Applicant's proposed subpoenas are not unduly intrusive or burdensome when judged by the "familiar standards of Rule 26 of the Federal

9

Rules of Civil Procedure." *Mees*, 793 F.3d at 302.  For example, the document subpoena is limited to "all documents in [Ulbrich's] possession, custody, or control[,]" and "documents [Ulbrich is] authorized or [has] the practical ability to retrieve." (Rosen Decl., Ex. 1 at 5).  It is also temporally limited to documents from January 1, 2019, through the present date.  (*Id.* at 6). Further, Applicant notes that the "documents sought largely will be in electronic form." (App. Br. 22).

Accordingly, the Court finds that Applicant's request comports with the Intel factors and is consistent with the twin purposes of Section 1782.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Applicant's application for judicial assistance pursuant to 28 U.S.C. § 1782.  Applicant may serve the proposed subpoenas included as Exhibits 1 and 2 to the Rosen Declaration.  In light of the arguments made by Applicant for sealed, *ex parte* treatment of the initiation of this case and the briefing on this application, the Court ORDERS this Order to be sealed until the earlier of November 30, 2022, or the date on which Mr. Ulbrich is served with the two subpoenas.  The Court further ORDERS counsel for Applicant to advise the Court promptly after service.

The Clerk of Court is directed to close this action for administrative purposes.  If any other party files a motion to quash, the action shall automatically be reopened.

SO ORDERED.

Dated:      November 10, 2022
            New York, New York

KATHERINE POLK FAILLA
United States District Judge

11