UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *IN RE EX PARTE* APPLICATION OF FOURWORLD EVENT OPPORTUNITIES FUND, L.P. FOR AN ORDER, PURSUANT TO § 1782, GRANTING IT LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS | 22 Misc. 316 (KPF) |

### DECLARATION OF ERIK WERNBERG IN SUPPORT OF CHRISTIAN ULBRICH'S MOTION TO VACATE THE COURT'S NOVEMBER 10 ORDER AND TO QUASH SUBPOENAS PURSUANT TO § 1782

I, Erik Wernberg, an attorney admitted to practice in Sweden, declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am a partner and Head of Dispute Resolution at the Stockholm office of Advokatfirman Cederquist KB ("Cederquist"), a Swedish law firm. I studied law at the University of Minnesota Law School, Uppsala University, and the University of Cambridge, and completed clerkships at the District Court of Stockholm and the Svea Court of Appeal (one of the six appellate courts in the Swedish legal system). I have been admitted as an *Advokat* (attorney at law) to practice before the Swedish courts since 2004.

2. Before joining Cederquist, I worked at the Swedish law firm Hammarskiold & Co for over six and a half years. Prior to that, I worked as a judge (*tingsfiskal*) of the Vastmanland District court for six months. Combined, I have 24 years of experience practicing Swedish law. I have frequently given presentations and authored a number of publications on various aspects of Swedish law, including on Swedish civil procedure. I have been recognized as a successful dispute

1

resolution professional by publications such as Chambers & Partners, Legal 500 (leading individual) and Who's Who Legal: Commercial Litigation and Arbitration.

3. Cederquist represents HomeStar InvestCo AB ("HomeStar"), a corporation organized under the laws of Sweden and a wholly owned indirect subsidiary of Vonovia SE ("Vonovia"), a residential real estate company organized under the laws of Germany and the European Union, in connection with proceedings between FourWorld Event Opportunities Fund, L.P. ("FourWorld") and HomeStar before an arbitral tribunal (the "Arbitral Proceedings") and the Stockholm District Court in Sweden (the "Stockholm Proceedings"). The Arbitral and Stockholm Proceedings concern the price paid by HomeStar for the compulsory acquisition of FourWorld's minority shareholding in a Swedish company previously known as Hembla AB ("Hembla").[1]

4. I understand that FourWorld has filed, and that the Court has granted, an application for discovery under Section 1782 against Mr. Christian Ulbrich, a supervisory board member of Vonovia. I submit this Declaration in support of Mr. Ulbrich's motion to vacate the Court's November 10, 2022 order and quash the document and deposition subpoenas served by FourWorld on Mr. Ulbrich (the "Subpoenas"), *see* FourWorld's Doc. Subpoena, ECF No. 10-01; FourWorld's Dep. Subpoena, ECF No. 10-02.

5. This declaration summarizes and sets forth, for the Court's convenience: (i) the factual background of the underlying dispute in Sweden; (ii) the Arbitral Proceedings to date, including FourWorld's unsuccessful document requests against HomeStar and Hembla; (iii) the status of the Stockholm Proceedings, including FourWorld's pending document requests against HomeStar, Vonovia, and Hembla (the "Stockholm Requests"); (iv) the scope of the overlap

---

[1] Hembla was renamed "Victoriahem Fastigheter AB" following HomeStar's acquisition. This declaration refers to the pre- and post-acquisition entity as "Hembla" for ease of reference.

between the discovery requested by FourWorld in the Subpoenas and the Stockholm Requests; and (v) the scope of the Stockholm District Court's document discovery jurisdiction. I make this declaration based on my own personal knowledge and based on documents I have reviewed.

## BACKGROUND OF THE DISPUTE

6. On September 23, 2019, Vonovia announced that HomeStar had acquired all of the shares in the Swedish company Hembla held by Vega Holdco S.á r.l., a subsidiary of the Blackstone Group Inc. (the "Vega Agreement"). Ex. 4 (HomeStar's Statement of Defense, dated July 7, 2022) ¶ 39 ("Homestar's Statement of Defense").[2] The acquisition comprised 6,136,989 class A shares and 50,722,985 class B shares, corresponding to approximately 69.30% of the voting rights and approximately 61.19% of the share capital of Hembla. *Id.* Following approval from the Swedish regulatory authorities, the acquisition was completed in early November 2019. *Id.* ¶ 40. HomeStar paid SEK 215 per share in Hembla. Ex. 2 (Separate Arbitral Award dated March 15, 2022) ¶ 425 ("Separate Arbitral Award").

7. Under Chapter 3, Section 1 of the Swedish Act on Public Takeover Offers on the Stock Market (Swedish Code of Statutes 2006:451), HomeStar's purchase of more than 30 percent of Hembla's voting shares obligated HomeStar to make an offer to acquire Hembla's outstanding public shares. Accordingly, on November 7, 2019, HomeStar announced a public tender offer (the "Tender Offer") to acquire the outstanding Class B shares in Hembla. Ex. 4 (HomeStar's Statement of Defense) ¶ 41. The price was SEK 215 per share—the same as that paid to Blackstone. *Id.*

8. The price of SEK 215 per share represented a premium of 11.5 percent over to the closing price for Hembla Class B shares on September 20, 2019 (the last trading day before the announcement of HomeStar's share purchase from Vega); a premium of 15.6 percent over the

---

[2] Materials cited as Ex. _ are attached as exhibits to this declaration.

volume-weighted average listed price paid for Hembla Class B shares during the three months preceding the acquisition; and a premium of 17.6 percent over the volume-weighted average listed price paid during the six months preceding the acquisition. Ex. 2 (Separate Arbitral Award) ¶ 425. HomeStar's offer indicated that it was unconditional and that the price would not be raised. *Id.* ¶ 426.

9. On November 22, 2019, HomeStar publicly announced that an independent bidding committee of the Hembla board of directors had issued an opinion stating that HomeStar's SEK 215 offer price "did not fully" reflect Hembla's growth opportunities and financial value. *Id.* ¶ 427. HomeStar also disclosed that the bid committee had obtained a fairness opinion from Handelsbanken Capital Markets, an investment bank, which stated that the offer price was not reasonable from a financial perspective for Hembla's shareholders. *Id.*

10. By contrast, on December 3, 2019, the Swedish Equity Savers' National Association (*Aktiespararna*) announced in a press release that it recommended its members to accept HomeStar's offer. *Id.* ¶ 428. Among other reasons, Aktiespararna explained that the purchase price of SEK 215 per share reflected the price paid in the Vega Agreement, a deal carried out by two professional and independent parties. Ex. 4 (HomeStar's Statement of Defense) ¶ 43.

11. By December 10, 2019, HomeStar had acquired approximately 94.1% of the share capital of Hembla, compared to 61.19% of the share capital at the time of the Vega Agreement. Ex. 2 (Separate Arbitral Award) ¶ 429. On the same day, HomeStar announced it would extend the Offer until January 8, 2020 (the "Offer Period"). *Id.* ¶ 430.

12. Under Chapter 22, Section 1 of the Swedish Companies Act (Swedish Code of Statutes 2005:551), a shareholder who holds more than 90% of the shares of a company is entitled to buy out the remaining shares of the other shareholders of the company. The Swedish Companies

4

Act further provides that any dispute concerning the amount of the purchase price in the compulsory acquisition of the remaining shares shall be determined by arbitration. A party that is dissatisfied with an arbitral award in compulsory acquisition proceedings may institute an action against the award before the Stockholm District Court.

13. On December 10, 2019, HomeStar announced that it would initiate a compulsory acquisition of the remaining minority shares in Hembla. *Id.* HomeStar further commenced arbitration pursuant to the Swedish Companies Act on December 18, 2019 to resolve disputes with minority shareholders regarding the compulsory acquisition. *See id.* ¶ 431. An arbitral tribunal consisting of Mr. Justice Johnny Herre (chairperson), Professor Rolf Skog, and Advokat Einar Wanhainen was appointed. All three arbitrators are highly qualified and have participated in numerous redemption proceedings.

14. By the end of the Offer Period, HomeStar had acquired roughly 96 percent of Hembla's shares, leaving a total of 4,057,737 shares, or approximately 4.37 percent, subject to the compulsory acquisition. *Id.* ¶¶ 432-33. Of the outstanding 4,057,737 minority shares subject to the compulsory acquisition, the vast majority—approximately 92 percent—were held by FourWorld and its affiliates. *Id.* ¶ 433. FourWorld apparently bought its shares during the Offer Period at a price of around SEK 215 a share. *Id.* In other words, FourWorld bought its shares in Hembla with the shares trading steadily at 215 SEK (with small fluctuations), and then objected to the compulsory acquisition at that same price shortly afterward. *See id.*

15. As of July 6, 2020, HomeStar holds all shares in Hembla. The redemption amount of SEK 215 per share plus interest was paid to all minority shareholders who were bought out. Ex. 4 (HomeStar's Statement of Defense) ¶ 51.

16.     The listed price of Hembla stock on September 20, 2019, the last trading day before the announcement of the Vega Agreement three days later, was SEK 192.80.[3] *Id.* ¶ 434. After the announcement of the Vega Agreement on September 23, 2019, the listed price of Hembla stock rose to SEK 215 and remained at that price with small fluctuations through the Offer period and until December 18, 2019, the date that HomeStar commenced the compulsory acquisition. *Id.* During this period (September 23, 2019 to December 18, 2019), Hembla shares were subject to significant trading and remained liquid. *Id.* ¶ 435.

## THE ARBITRAL PROCEEDINGS

17.     In connection with the arbitral proceedings, FourWorld submitted a request for production of documents to the Arbitral Tribunal. On May 29, 2021, the Arbitral Tribunal rendered a decision denying FourWorld's requests (attached here as Exhibit 1). FourWorld had requested that the Arbitral Tribunal order each of HomeStar and Hembla to produce the following documents allegedly bearing on the "fair value" of Hembla's shares:

(a) all documents that Hembla, or another company in the group of companies in which Hembla was part of before HomeStar's acquisition of Blackstone's shares in Hembla, provided or had provided to HomeStar or to companies in the group of companies in which HomeStar is part of, preceding HomeStar's acquisition of shares in Hembla from Blackstone, including business plans, investment plans, forecasts, budgets, real estate- and company valuations, strategy documents, internal accounts, board reports and management reports, or other documentation regarding Hembla;

---

[3] Paragraph 434 of the Separate Arbitral Award erroneously states that the listed price of Hembla stock on September 20, 2019 was SEK 192,90. See Ex. 2 (Separate Arbitral Award) ¶ 434.

6

(b) a copy of the share purchase agreement regarding HomeStar's acquisition of shares in Hembla from Blackstone;

(c) all documents, such as business plans, investment plans, forecasts, budgets, real estate- and company valuations, strategy documents, internal accounts, board reports and management reports or other documentation, which Hembla submitted to Handelsbanken within the framework of Handelsbanken's assignment to issue a valuation statement regarding any impending takeover bid from HomeStar; and

(d) all documents, such as memorandums, compilations of market information, business plans, investment plans, forecasts, budgets, real estate- and company valuations, strategy documents, internal accounts, board reports and management reports, or other documentation that the independent bid committee in Hembla established or were submitted within the framework of its assignment in connection with the takeover bid and which are not covered by point c) above.

Ex. 1 (Arbitral Tribunal's Decision Regarding Prod. of Docs., dated May 29, 2021) ¶ 3 ("Arb. Doc. Prod. Decision").

18. The arbitral tribunal's ruling centered on the exchange share price rule, set forth in Chapter 22 Section 2 of the Swedish Companies Act (the "Listed Price Rule" or the "Exchange Share Price Rule"). Under that rule, "the purchase price" for compulsorily acquired shares "traded on a regulated marketplace . . . shall correspond to the[ir] listed value, unless special grounds otherwise dictate." If such "special grounds" (also referred to as "particular circumstances," or *särskilda skäl* in Swedish) exist, however, then "the purchase price for a share shall be determined in such a manner that it corresponds to the price for the share which might be expected upon a sale under normal circumstances."

7

19. FourWorld argued that the "fair value" of the shares exceeded the SEK 215 list price, and that that constituted special grounds for departing from the Exchange Share Price Rule. Ex. 1 (Arb. Discovery Decision) ¶ 7. In support, FourWorld pointed to essentially the same grounds set forth in its Section 1782 Application here, see Br. Supp. FourWorld's Section 1782 App. 1-2, 8-11, ECF No. 9, including that the stock price had remained static at SEK 215 since HomeStar acquired its initial shareholding from Vega, and that the independent committee and Handelsbanken opined that the shares were undervalued. Ex. 1 (Arb. Doc. Prod. Decision) ¶¶ 7-20.

20. In denying FourWorld's document requests, the arbitral tribunal noted that the fair value of Hembla's shares—and thus the document requests—were irrelevant to the question at hand: whether "particular circumstances" existed under the Swedish Companies Act to depart from the default Exchange Share Price Rule. Id. ¶ 73. Those grounds, the tribunal found, encompassed limited circumstances impairing the trading public's ability to assess the stock price, such as the disclosure of insufficient or misleading information under applicable regulations; a lack of sufficiently active trading of the stock (such that a price cannot be established); or criminal manipulation of the quoted price. Id. ¶¶ 62-69. FourWorld alleged none of those circumstances, and, as the tribunal noted, "information that is generally only relevant to determine if there was a surplus value in [Hembla] is irrelevant for assessing whether there are particular circumstances to deviate from the Exchange Share Price Rule." Id. ¶¶ 69-74. Thus, the tribunal concluded, FourWorld's document requests "ha[ve] significant features of being a so-called fishing expedition which should not be allowed." Id. ¶ 71.

21. On March 15, 2022, the Arbitral Tribunal separately ruled on the merits of the compulsory acquisition (the "Separate Arbitral Award") (attached here as Exhibit 2) and held that

the redemption price of SEK 215 was appropriate pursuant to the Exchange Share Price Rule.[4] FourWorld again argued that the "real value" of the shares exceeded the SEK 215 list price, and that that constituted "special grounds" for departing from the Exchange Share Price Rule. *See* Ex. 2 (Separate Arbitral Award) ¶¶ 171-370.

22. Quoting the legislative history of the Companies Act, the tribunal noted that the Swedish legislature had rejected the very argument that FourWorld proffered:

> [I]t must be assumed that the price paid for the shares on a functioning stock market under normal conditions represents the real value of the shares . . . . The fact that . . . there may be surplus values in the company that are not reflected in the listed price, is in that context of minor importance . . . . [A] rule that the redemption amount is determined on the basis of the market value of the shares is much simpler to apply and leads to greater predictability than a rule based on a more theoretically oriented valuation model.

*Id.* ¶ 410.

23. A contrary rule, the tribunal reasoned, would not only lead to the anomalous result of FourWorld receiving a higher payout than it would have in a voluntary sale of its shares, but also create "much greater uncertainty" in applying the rule, since "all valuation models" are "depend[ent] on a number of assumptions, on which different people may legitimately hold different views." *Id.* ¶ 406. The Swedish legislature had specifically sought to avoid that result by leaving the determination of the stock price to a fully informed and properly functioning stock market. *See id.* For that reason, the tribunal noted, the fact that Handelsbanken and the Hembla independent committee did not consider the SEK 215 price reasonable was of no import: Hembla shareholders "considered that there was reason to sell at SEK 215, even taking into account these recommendations." *Id.* ¶ 458.

---

[4] The Separate Arbitral Award omitted FourWorld Event Opportunities Fund, L.P. from the list of participants, which appears to be a mistake. FourWorld Event Opportunities Fund, L.P. was a participant in the arbitral proceedings, as noted in FourWorld's Application and the supporting Declaration of Pontus Scherp, *see* Br. Supp. FourWorld's Section 1782 App. 8, ECF No. 9; P. Scherp Decl. Supp. FourWorld's Section 1782 App. ¶¶ 21-22, ECF No. 12.

24. The tribunal also found to be "of no relevance whatsoever" FourWorld's argument that the correlation between the stock price, the price of the tender offer, and the price of HomeStar's prior purchase of the shares from Vega constituted grounds for departing from the Exchange Share Price Rule. *Id*. ¶ 450. According to the tribunal, "[b]oth circumstances merely meant the market became aware that HomeStar undertook to pay SEK 215 for the Hembla share." *Id.* The tribunal further noted that the Swedish Supreme Court had specifically rejected FourWorld's argument in its ruling in "*Balken II*" (Nytt Juridiskt Arkiv [NJA] [Supreme Court Reports] 1996 p. 293 (Swed.)):

> If . . . the value of the listed price [of the compulsorily acquired shares] as a yardstick [under the Exchange Share Price Rule] must be tested. . . . Often it may be sufficient to find that the current price closely corresponds to the price paid by the parent company for its shares in the target company as a result of or in connection with a public takeover bid.

*Id.* ¶ 422.

25. The tribunal rejected FourWorld's remaining arguments regarding comparative increases in the prices of other real estate stocks and indices, HomeStar's refusal to raise the tender offer price, and an allegedly lower participation rate from minority shareholders on similar bases. *See generally id.* ¶¶ 438-63.

26. The tribunal thus ruled that "[s]ince the Hembla share was traded on a regulated market and no special reasons justifying a deviation existed, the Exchange Share Price Rule shall be applied." *Id.* ¶ 463. A decision was issued in favor of HomeStar.

## THE STOCKHOLM PROCEEDINGS AND STOCKHOLM REQUESTS

27. On May 13, 2022, FourWorld filed a writ of summons to the Stockholm District Court in Sweden (attached here as Exhibit 3), seeking to repeal the Separate Arbitral Award. On June 6, 2022, the arbitral tribunal stayed the Arbitral Proceedings—where the only issue left to be determined is the formality of determining the listed stock price at the date of the compulsory

acquisition—pending the Stockholm District Court proceedings. Together with the writ of summons, FourWorld also requested production of documents from HomeStar, Vonovia, and Hembla. HomeStar filed a Statement of Defense on July 7, 2022 (attached here as Exhibit 4). FourWorld filed a response on October 13, 2022 (attached here as Exhibit 5) to which HomeStar replied on November 10, 2022 (attached here as Exhibit 6). A preliminary hearing was held on November 30, 2022. During the preliminary hearing a timetable was set for the proceedings. A final merits hearing is to be held in May 2024. FourWorld filed an additional response regarding its request for production of documents on December 22, 2022 (attached here as Exhibit 10), to which HomeStar will reply on February 10, 2023.[5] On December 22, 2022, Hembla also filed a response to FourWorld's request for documents (attached here as Exhibit 11).

28.     Because the dispute before the Stockholm District Court concerns the Separate Arbitral Award, and as reflected in the parties' submission to the Stockholm District Court, the only issue before the Stockholm District Court is whether particular circumstances exist to justify a deviation from the Exchange Share Price Rule. Additionally, even if the Stockholm District Court were to grant FourWorld's writ of summons and determine that the Exchange Share Price Rule were not applicable, the matter of valuing the minority shares would fall to the arbitral tribunal, not the Stockholm District Court.

29.     In its October 13, 2022, submission to the Stockholm District Court, FourWorld submitted a revised request for production of documents against HomeStar, as well as third parties Vonovia, and Hembla, slightly limiting the scope of the request for production of documents set forth in the writ of summons (*i.e.* the Stockholm Requests). Ex. 5 (FourWorld's Response

---

[5] In addition, both parties have made additional submissions to the Stockholm District Court mainly regarding procedural matters.

Submission, dated October 13, 2022) ¶¶ 218-75 ("FourWorld's October 13 Submission"). The Stockholm Requests seek essentially the same documents FourWorld unsuccessfully sought before the Arbitral Tribunal:

    a. all correspondence between Blackstone and HomeStar or Vonovia in the context of the contract negotiation regarding the Vega Agreement until September 23, 2019 concerning the price and other terms of the Vega Agreement;

    b. meeting notes (but not memoranda for personal use) and minutes of the meetings between Blackstone and HomeStar or Vonovia or representatives of these companies held up to September 23, 2019 in the context of the contract negotiation regarding the Vega Agreement;

    c. presentations, analyses, reports and memoranda relating to Hembla received or prepared in connection with and in anticipation of the Vega Agreement; and

    d. a copy of the share transfer agreement relating to HomeStar's acquisition of shares in Hembla from Blackstone.

    e. all documents provided by Hembla (including Hembla's independent bid committee) to Handelsbanken or prepared by Handelsbanken and delivered to Hembla (including Hembla's independent bid committee), in the course of Handelsbanken's engagement to provide a valuation opinion with respect to the HomeStar tender offer, excluding any notes for personal use, including, but not limited to:

        i. the business plan for Hembla prepared by Bank of America Merrill Lynch on November 9, 2019;

    ii. meeting notes (but not notes for personal use) and minutes of the meeting between Handelsbanken and the management in Hembla on October 10, 2019; and

    iii. documents drawn up both before and after the meeting between Handelsbanken and the management in Hembla on October 10, 2019 by the participants of the meeting.

*Id.* ¶¶ 219, 222.

30. HomeStar has taken the position that the Stockholm Requests seek documents that are irrelevant to the application of the Exchange Share Price Rule, which is the only issue to be tried before the Stockholm District Court.[6] *See* Ex. 6 (HomeStar's Reply Submission, dated November 10, 2022) ¶¶ 40-67 ("HomeStar's November 10 Submission"). Pursuant to Chapter 38, Section 2 of the Swedish Code of Judicial Procedure, a prerequisite for a Swedish court to order production of documents is that the requested documents must be assumed to bear significance as evidence. If the documents requested by a party do not meet that requirement, the request shall be denied.[7]

31. The Arbitral Tribunal has already considered, and rejected, a corresponding request for production, finding that the documents FourWorld sought were irrelevant to the subject matter of the Separate Arbitral Award. *See supra* ¶ 20. In HomeStar's view, there is no reason for the Stockholm District Court to make a different assessment, as the Separate Arbitral Award is the subject of the proceedings before the Stockholm District Court. HomeStar accordingly takes the

---

[6] HomeStar has also argued that the Stockholm Requests should be denied because they are not precise enough for the Stockholm District Court to grant, and because they concern trade and company secrets.

[7] Other requirements also to requests for documents apply under Swedish law. For example, the specific documents must be identified with sufficient precision, the documents must already exist (with limited exceptions), the counterparty must possess the documents, the balance of interests must favor disclosure, and exceptions (such as those for trade secrets or attorney-client privilege) must not apply.

position that FourWorld's document requests exceed the Stockholm District Court's scope of review because the requested documents lack evidential significance and relevance to the question of the applicability of the Exchange Share Price Rule.

32. The Stockholm Requests are currently pending before the Stockholm District Court, which is not expected to render a decision on the requests prior to April 2023 at the earliest. FourWorld is free to adjust its requests to seek a narrower or broader set of documents at any time up until the final hearing.

**FOURWORLD'S SUBPOENAS WOULD MOOT THE STOCKHOLM REQUESTS**

33. The documents requests in FourWorld's Subpoenas are broader in scope than, and completely subsume, the Stockholm Requests. Allowing FourWorld to pursue discovery through the Subpoenas would, in HomeStar's view, circumvent the proceedings relating to the Stockholm Requests underway before the Stockholm District Court and render those proceedings moot. This is particularly so given that FourWorld can seek the same documents before the Stockholm District Court. *See infra* ¶¶ 36-41 HomeStar has accordingly taken the position before the Stockholm District Court that FourWorld's Section 1782 Application is being used to circumvent the Stockholm Proceedings.[8]

34. By way of illustration, Request 1 of FourWorld's document subpoena seeks "*[a]ll documents and communications concerning [Hembla]* [or] the Tender Offer . . . whether sent to and/or received from . . . Handelsbanken . . . [or] Blackstone." FourWorld's Doc. Subpoena 6, ECF No. 10-01. Similarly, Request 11 seeks "[a]ll documents and communications concerning the Tender Offer, the [Hembla] [a]cquisition, [or] [Hembla] . . . exchanged between . . . You and

---

[8] HomeStar has also requested that FourWorld be required to post collateral for HomeStar's document production costs (including any costs in the Section 1782 proceedings before this Court), subject to the Swedish Act on the obligation for foreign plaintiffs to provide security for litigation costs (Swedish Code of Statutes 1980:307).

Handelsbanken," and Request 12 seeks "[a]ll documents and communications concerning the Vega Agreement." *Id.* at 8-9. Those requests are significantly broader than FourWorld's Stockholm Requests, which are limited to certain documents regarding the Vega Agreement and the Handelsbanken opinion. *See supra* ¶ 29.

35. Because FourWorld's Subpoenas seek a broader set of documents than FourWorld has requested in Stockholm, allowing Section 1782 discovery to proceed would, in Homestar's view, effectively circumvent and render moot the Stockholm District Court's impending ruling on the Stockholm Requests.

**THE DOCUMENTS REQUESTED IN FOURWORLD'S SUBPOENAS ARE WITHIN THE JURISDICTIONAL REACH OF THE STOCKHOLM DISTRICT COURT**

36. Even though FourWorld's Section 1782 document subpoena seek a broader set of documents than FourWorld has requested in the Stockholm Proceedings, FourWorld could in theory request the same set of documents in the Stockholm Proceedings from the Stockholm District Court. The Stockholm District Court may order the production of all the documents FourWorld seeks through its Section 1782 application to this Court (should it determine that the applicable requirements for production of documents are met, *see supra* ¶ 30 & n.7). The documents requested in FourWorld's document subpoena are therefore within the Stockholm District Court's jurisdictional reach.

37. The duty to produce a document to a Swedish court is regulated in Chapter 38, Section 2 of the Swedish Code of Judicial Procedure. The provision states that anyone who is possessing a written document that can be assumed to be of importance as evidence, is obliged to produce it. The provision is not limited to the parties involved in the proceedings; third parties may also become subject to an order to produce documents provided that the Swedish court has jurisdiction. Additionally, according to recent case law from the Swedish Supreme court (Nytt

15

Juridiskt Arkiv [NJA] [Supreme Court Reports] 2022 p. 249 (Swed.)), if a person or entity residing in Sweden and subject to a document request has access to an electronic document (based on either a legal or contractual right), it is irrelevant whether the document is actually stored in Sweden or abroad.

38. Relatedly, when a third-party person or entity resides abroad, the Swedish courts can order production of documents from such third parties through international agreements. In particular, if the third-party person or entity is a resident of the EU, the Swedish courts may obtain evidence from such third parties through regulation (EU) 2020/1783 of the European Parliament and of the Council of November 25, 2020 on cooperation between the courts of the Member States in the taking of evidence in civil or commercial matters (the "EU Regulation").[9] The EU Regulation states that a member state court must assist in the taking of evidence after request from a Swedish court.

39. The EU Regulation provides a mechanism for the Stockholm District Court to order discovery from third parties based in Germany. On December 5, 2022, the Stockholm District Court issued a letter to FourWorld (attached here as Exhibit 7) stating that "the EU Evidence Regulation applies" to FourWorld's document requests to Vonovia, which is a German entity. Ex. 7 (Injunction dated December 5, 2022). FourWorld responded on December 12, 2022 (attached here as Exhibit 8), "request[ing] the [Stockholm] District Court to request the competent German court to take evidence from Vonovia in Germany in accordance with the Swedish Code of Judicial Procedure and the E[U] Regulation." Ex. 8 (FourWorld Letter dated December 12, 2022). On December 13, 2022, the Stockholm District Court issued a letter (attached here as Exhibit 9) stating

---

[9] Sweden has also ratified the Hague Convention of 18 March 1970 on the taking of evidence abroad in civil or commercial matters. However, pursuant to Article 29 of the Regulation, the Regulation prevails in relations between the EU member states.

that it will first decide whether the legal requirements under Swedish law for the document request against Vonovia are satisfied before (if needed) taking necessary actions to make a request to a German court for assistance regarding the production of documents. Ex. 9 (Stockholm District Court Letter dated December 13, 2022).

40. The fact that Mr. Ulbrich is located in Germany similarly poses no bar to the document discovery jurisdiction of the Stockholm District Court. Germany is a member state of the European Union that must comply with the EU Regulation, and third parties can be subject to an order to submit documents according to Swedish law. FourWorld could therefore in theory request—and the Stockholm District Court could, with the assistance of a German court, order—Mr. Ulbrich to produce the same documents that FourWorld seeks in its Section 1782 Subpoenas, in the same manner as FourWorld's request for documents against Vonovia. There are also no limitations under Swedish law as to what kind of documents can be requested, as long as the materials are in the possession of the target and the request meets the criteria for production of documents.

41. In sum, the evidence requested in FourWorld's Section 1782 Subpoenas document is within the Stockholm District Court's jurisdictional reach. FourWorld has, however, chosen not to seek any documents from Mr. Ulbrich in the Stockholm Proceedings thus far.

[Signature page follows]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 3rd day of January 2023, at Stockholm, Sweden.

_____
Erik Wernberg